STATE OF CONNECTICUT *v.* LEON E. BELL

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SPONZO, Js.

Argued June 4—decision released September 21, 1982

*Joseph M. Shortall,* chief public defender, with whom were *Richard F. Kelly,* assistant public defender, and, on the brief, *A. Arthur Giddon,* public defender, and *John W. Callahan,* law student intern, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom were *Enrico Vaccaro,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

SPONZO, J. The defendant was charged in a substitute information with two counts of robbery in the first degree, in violation of § 53a-134 (a) (4) of the General Statutes; eight counts of kidnapping in the second degree, in violation of § 53a-94; one count of unlawfully carrying a weapon in a motor vehicle in violation of § 29-38; and one count of escape from custody in violation of § 53a-171. Following a trial

to the jury the defendant was convicted on all twelve counts and was sentenced to a total effective prison term of not less than twenty nor more than forty years. After consideration by the sentence review division this sentence was modified to an effective term of not less than thirteen nor more than twenty-six years.

For the sake of clarity it is appropriate to state that the first six counts, namely, one count of robbery in the first degree, four counts of kidnapping in the second degree and one count of unlawfully carrying a weapon in a motor vehicle resulted from an incident which occurred in the town of West Hartford on April 16, 1980; five counts, namely, one count of robbery in the first degree and four counts of kidnapping in the second degree resulted from an incident which occurred in the town of Rocky Hill on April 12, 1980; and the last count, escape from custody, occurred in the city of Hartford on April 23, 1980.

A review of the evidence reveals that at approximately 10 a.m. on April 16, 1980 the accused entered the Burger King restaurant on Park Road in West Hartford through the back door while the manager and two employees were preparing to open for the day. The defendant, who was dressed with a sweatshirt under which he placed his right hand, motioned the manager to approach him and "whispered" to him to place the other two employees in the walk-in freezer and shut the door. The manager followed these instructions and then led the accused to the safe located in the front of the store and opened the safe. Money from the safe as well as from the cash register was placed in a paper bag. The manager then returned to the freezer area, gave the robber

his wallet and was directed to enter the freezer. Shortly thereafter, another employee arrived and was ordered by the accused to enter the freezer. While in the freezer the manager attempted to leave but was told to remain. Upon leaving the restaurant the accused was seen by another employee who then entered the restaurant and released the employees from the freezer. These employees, confined for a period of two to fifteen minutes, discovered that two of the women's purses had been stolen.

During the course of the robbery, while no weapon was seen or displayed, some of the employees assumed that the accused had a gun because of a bulge where the accused had his hand under the sweatshirt. The robbery was reported immediately and the defendant was apprehended a short distance from the scene of the crime. The police found a knife and contents from the restaurant as well as the manager's wallet in the car operated by Leon Bell. Shortly after his apprehension, the accused was identified by the manager of Burger King. The accused testified and admitted his involvement in this robbery.

On April 17, 1980, the manager of the Friendly Restaurant in Rocky Hill was taken to the Rocky Hill police station and identified the accused as the person who robbed his store on April 12, 1980. This robbery occurred at approximately 1 a.m. when the robber ordered the manager and his four employees to return into the restaurant and announced his intention to rob. He ordered all, except the manager, into the freezer and directed that they move fast. After the manager opened the safe and placed all of the contents into a bag, he was ordered to

enter the freezer. The robber shut the door and left the premises. After being in the freezer approximately five minutes, the employees emerged. Again, because the robber held his hand concealed under his sweatshirt, all the employees assumed that the robber was armed with a gun. During the trial the defendant offered an alibi that he was not present at the time of this crime.

The last count involved an incident where the accused was being transported to court in Hartford on April 23, 1980 while in the custody of employees of the department of correction and escaped. He was recaptured later that day while at his mother's home.

Over the objection of the defendant made prior to trial the court permitted the three separate informations to be joined for trial. The defendant has assigned error in the court's ruling on this issue.

The defendant, in his brief, has relied heavily on reasoning in cases such as *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976), and *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81 (1971). In fairness to both counsel, neither was aware of the most recent decision on the issue of joinder, which was released on June 1, 1982. In *State* v. *King,* 187 Conn. 292, 445 A.2d 901 (1982), this court thoroughly and extensively reviewed the matter of joinder of trials. It specifically stated it "in no way invalidates our previous case law on the subject of joinder. The trial court still must exercise its discretion in determining whether to join indictments or informations and prior cases on this point remain unaffected." *State* v. *King,* supra, 298n. "[A]n accused bears a heavy burden to show that

the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance." *State* v. *King,* supra, 302. The grant or denial of a motion for severance rests in the sound discretion of the trial judge. "The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant." *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154 (1952); *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 (1943).

In the present case the evidence was not complicated. It was presented by the state in an orderly manner. Practically all the evidence was elicited from eyewitnesses. The evidence pertaining to the West Hartford robbery was presented before the offer of Rocky Hill robbery testimony or the testimony pertaining to the escape charge. The trial court on several occasions insisted that the evidence be kept separate and so instructed the jury. There is no indication that the jury was confused in considering the evidence being offered as to the specific robbery. Since the defendant testified only to the West Hartford robbery, the state was careful to limit its cross-examination to that event.

Since the state was able to present the evidence in an orderly manner and since it appears that the jury was not confused and was able to consider the evidence as to each charge separately and distinctly, it is clear that the trial court did not abuse its discretion in permitting a single trial. The judicial economy resulting from the court's action is justified and obvious.

The defendant also assigns as error the failure of the court properly to instruct the jury in considering the evidence that the accused had given a false name and address to the West Hartford police and also had escaped from custody on April 23, 1980. In considering this assignment of error we note that the accused admitted that he gave a false name and address.

The purpose of introduction of this evidence is to show consciousness of guilt. *State* v. *Moynahan,* 164 Conn. 560, 595–96, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973). The assumption of a false name and address obviously constitutes consciousness of guilt evidence. 2 Wigmore, Evidence (3d Ed.) § 276 (4). It is well established that flight of a person accused of a crime is an element which, when considered with other facts of the case, is relevant to the accused's guilt. *State* v. *Rosa,* 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976).

There is no abuse of discretion or manifest injustice evident in the record. The trial court emphasized in colloquy with both parties that the false statement evidence was not being offered to prove another crime, but rather for the specific purpose of showing a consciousness of guilt. It decided to admit it for that purpose in order to deemphasize the criminal charge then pending against the defendant arising from the false statements. The admission of that evidence is, therefore, without error. Finally, the court did charge that guilt of one offense did not necessarily prove guilt of other offenses.

In determining the admissibility of this evidence the court must consider whether its prejudicial tendency outweighs its probative value. *State* v. *Moynahan,* supra, 597; see *State* v. *Tedesco,* 175 Conn. 279, 290, 397 A.2d 1352 (1978). The admissibility of such evidence must be entrusted to the sound discretion of the trial judge. *State* v. *Tucker,* 181 Conn. 406, 416, 435 A.2d 986 (1980).

There is no basis for considering the defendant's claim that the trial court erred in its charge by failing to caution the jury only to consider the false statement evidence when deliberating on the West Hartford incident. Challenging the jury instruction on that issue for the first time on appeal, the defendant has failed to comply with Practice Book §§ 315, 854, 3060F (c) (1), (2). *State* v. *Miller,* 186 Conn. 654, 658, 443 A.2d 906 (1982); *State* v. *Nerkowski,* 184 Conn. 520, 523, 440 A.2d 195 (1981); *State* v. *Topciu,* 183 Conn. 1, 3, 438 A.2d 803 (1981). We need not consider claims which have not been distinctly raised at trial nor arisen subsequent thereto. *State* v. *Miller,* supra; see Practice Book § 3063; *State* v. *Delafose,* 185 Conn. 517, 520, 441 A.2d 158 (1981); *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576 (1973). Such claims are considered waived. *State* v. *Miller,* supra; *State* v. *Evans,* supra, 70. Since the defendant's claim does not involve exceptional circumstances, we will not review it. *State* v. *Miller,* supra; *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982); *State* v. *Packard,* 184 Conn. 258, 271, 439 A.2d 983 (1981); *State* v. *Evans,* supra, 69.

Nor will we review the defendant's claims of error relating to the escape evidence. The defendant's

brief pursuant to Practice Book § 3060F (c) (3) refers solely to an objection and exception to that evidence voiced during the pretrial hearing of his motion in limine. Seeking to exclude irrelevant, inadmissible and prejudicial evidence from trial, a motion in limine is not a final ruling upon the ultimate admissibility of evidence. *Lagenour* v. *State,* 268 Ind. 441, 450, 376 N.E.2d 475 (1978); *Redding* v. *Ferguson,* 501 S.W.2d 717, 722 (Tex. Civ. App. 1973); Black's Law Dictionary. If it is overruled, therefore, an objection must be made at the time the evidence is offered at trial to preserve the right to an appeal. *Lagenour* v. *State,* supra; *Twyford* v. *Weber,* 220 N.W.2d 919, 924 (Iowa 1974); *Redding* v. *Ferguson,* supra, 723; see annot., 63 A.L.R.3d 311, 333–34. The defendant's reliance on his pretrial objection is thus misplaced and does not provide a basis for his claim. The trial court's jury instruction on the escape will likewise not be addressed because it too had not been challenged prior to this appeal.

Further, the defendant has claimed error in the court's denial of his motions for dismissal on the robbery counts. Section 53a-134 (a) (4) of the General Statutes states, in part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

While it is true that the state did not present evidence from any witness that a pistol, revolver, rifle, shotgun, machine gun or firearm was actually

observed, it did offer evidence from several employees at each of the restaurants that they did see a bulging object under the defendant's sweatshirt which was pointed at them. Some witnesses described the object as big and long and all concluded that they thought the object was a gun or sawed-off shotgun or a firearm of some type. This evidence satisfied the state's burden of proving beyond a reasonable doubt an essential element of the crime of robbery in the first degree.

This evidence placed on the defendant the burden of proving a fact peculiarly within his knowledge and does not offend his right to the presumption of innocence. *State* v. *Hawthorne,* 175 Conn. 569, 574–75, 402 A.2d 759 (1978). The defendant chose to testify that during the course of the Burger King robbery he held a hammer handle under his sweatshirt. The defendant did not testify as to the object seen in the Rocky Hill affair since he offered the alibi defense. It is apparent that the jury exercised their right not to believe the accused's version of the Burger King episode and chose to believe the state's evidence that eyewitnesses assumed he was carrying some sort of firearm in the commission of both robberies.

The final claim of error to be considered is the denial of the defendant's motion to dismiss on the eight kidnapping counts. Section 53a-94 (a) of the General Statutes provides that "[a] person is guilty of kidnapping in the second degree when he abducts another person." Section 53a-91 (2) defines "abduct" to mean "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intim-

idation." Finally, "restrain" means to "restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by . . . confining him either in the place where the restriction commences or in a place to which he has moved, without consent." General Statutes § 53a-91 (1).

The state's evidence is abundant from the many victims that they were abducted. They were restrained with the defendant's intent to prevent their liberation by his conduct of threatening to use physical force or intimidation. The victims assumed that he was using a firearm to force them into the freezer. None consented to enter the freezer and only did so on the command or order of the defendant, who used such words as "get in," "stay in there," "get in the freezer," and "move faster." All victims complied with the accused's instructions. How long the victims remained in the freezer is immaterial provided the state proved the essential elements of the offense and in particular abduction.

The defendant contends that the kidnapping charge in this case was incidental to the robbery charge. In *State* v. *Dubina,* 164 Conn. 95, 318 A.2d 95 (1972), this court stated (p. 100) that whether the detention was merely incidental to another crime was, under appropriate instructions from the court, a question for the jury. *State* v. *Briggs,* 179 Conn. 328, 339, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980). "Whether in a given case the restraint is accompanied by the requisite intent, so as to constitute kidnapping, or is merely incidental to another felony, is ordinarily a question for the jury." *State* v. *Lee,* 177 Conn. 335, 343, 417 A.2d 354 (1979); *State* v.

*Chetcuti,* 173 Conn. 165, 170, 377 A.2d 263 (1977). The evidence presented to the jury on this charge was adequate to support the jury verdict that the requisite restraint and intent to constitute kidnapping in the second degree were present.

There is no error.

In this opinion the other judges concurred.