## STATE OF CONNECTICUT *v.* JOSE JIMENEZ
### (AC 23065)

Lavery, C. J., and West and Dupont, Js.

Argued October 15—officially released December 17, 2002

*Carlos E. Candal,* special public defender, for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *Michael Dearington,* state's attorney, and, on the brief, *Michael A. Pepper,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. This criminal appeal concerns the judgments of conviction rendered against the defendant pursuant to two separate sets of charges that were consolidated for trial before a jury.[1] The first set of charges concerns allegations of sexual assault, kidnapping and risk of injury to a child (referred to herein as the assault charges); the second set concerns charges of tampering with a witness as an accessory and hindering prosecution. On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal, due to insufficient evidence, on the charges of accessory to tampering with a witness and hindering prosecution, and (2) charged the jury that it could consider the tampering and hindering prosecu-

---

[1] The jury convicted the defendant of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2), tampering with a witness on the theory of accessory liability in violation of General Statutes §§ 53a-8 (a) and 53a-151 (a), and hindering prosecution in the second degree in violation of General Statutes § 53a-167.

tion charges as consciousness of guilt evidence as to the first set of charges. We affirm the judgments of conviction as to all charges.

The jury reasonably could have found the following facts.[2] In 1998, prior to the events giving rise to the assault charges, the defendant had a brief romantic relationship with the victim's mother, of which the victim was aware. The victim's mother terminated the relationship when she discovered that the defendant was married. In June, 1998, when the victim was eleven years old, the defendant called for the victim at her school. He told the victim that her mother had sent him. The victim got into the backseat of the defendant's motor vehicle. Instead of taking the victim home, the defendant drove to a deserted location and sexually assaulted the victim in the backseat of his vehicle. After forcing her to have sexual intercourse with him, the defendant warned the victim not to tell anyone what had happened or she and her mother would be in trouble. The victim previously had witnessed the defendant physically and verbally threaten to harm her mother. The defendant told the victim that he was going to take her to the home of one of her mother's friends because he claimed that the victim's mother was not at home.

Prior to meeting the victim at her school, the defendant had placed a telephone call to a friend of the victim's mother. He explained that the victim's mother was not at home and he wanted to bring the victim to the friend's home after school. The friend agreed to care for the victim until her mother returned from work. The defendant took the victim to the friend's home after his assault of the victim. Before the child got out of his vehicle, the defendant gave her $7.

---

[2] In accord with court policy to protect the privacy rights of victims in matters concerning sexual abuse, we decline to use the names of individuals involved in this appeal. See General Statutes § 54-86e.

The victim did not tell anyone what the defendant had done to her until several months later. In September, 1998, the victim lived with her aunt temporarily. When the time approached for the victim to return to her mother's home, the victim asked her aunt to permit her to stay. The aunt questioned the victim, who revealed that she was fearful that her mother would resume a relationship with the defendant. She told her aunt that she was afraid of the defendant and why. When the victim returned to her home, the victim and aunt told the victim's mother of the defendant's assault. The victim's mother took the victim to the New Haven police department to report the incident.

On February 3, 1999, the defendant was due in court to respond to charges alleged in the assault information. On that date, while the victim was waiting to go into school, a man she knew as Cubano[3] approached her. The victim recognized Cubano as the man who, in the past, had accompanied the defendant when he came to her home while the defendant was involved with the victim's mother. The mother of the victim described Cubano as the defendant's right-hand man, and the victim described Cubano as "like a brother" to the defendant. Cubano told the victim that if she said something when she went to court, he would kill her and her mother. He also gave her $25. During the school day, the victim was too afraid to tell anyone about the encounter; but when she got home, she reported the incident to her mother. The victim's mother contacted the police.

Robert Williams, a New Haven police officer, responded to the complaint by going to the victim's home. The victim explained her encounter with Cubano and described his clothing and appearance to Williams. The victim's mother suggested that Cubano could be

[3] "C" is an alias or street name.

found at the defendant's apartment. Williams then went to the address provided by the victim's mother to look for a male known to the victim and to her mother as Cubano. Williams knocked on the door of the defendant's apartment. The defendant opened the door and invited Williams inside. When he entered, Williams observed two men watching television. One of the men matched the description the victim had given of Cubano, including the clothes he was wearing. Williams asked the defendant if Cubano was present. The defendant said no and that he had never heard of Cubano. The defendant also told Williams that he had been in court that day and everything was settled. Until that moment, Williams had not known of any court appearance concerning the defendant. Williams inquired about the other two men in the apartment; the defendant replied that they were his friends who came to visit regularly. Williams pointed to the man who fit the victim's description of Cubano and asked if he was Cubano. The defendant shook his head no and gestured to the two men not to speak to Williams.

Williams had conducted his interview in English, but at no time did the defendant indicate that he did not understand Williams. Another New Haven police officer, who is bilingual, joined Williams and repeated in Spanish what Williams had asked. Again, the defendant indicated that Cubano was not in the apartment. Because one of the two men fit the description of Cubano and the defendant denied that either of the men was Cubano, the officers obtained permission to bring the victim and her mother to the apartment for an identification. When the victim and her mother arrived, the officers escorted the three men, one by one, outside. The victim identified one of the men as Cubano, the man who had threatened her that day. The victim's mother also identified Cubano. The victim and her mother also identified the defendant.

Cubano was charged with tampering with a witness and pleaded guilty to the charge. At the defendant's trial, the defendant and the state stipulated that Cubano had pleaded guilty, and the stipulation was read to the jury.

I

The defendant's first set of claims concerns the court's denying his motion for a judgment of acquittal on the charges of tampering with a witness as an accessory in violation of General Statutes §§ 53a-8 (a)[4] and 53a-151,[5] and hindering prosecution in the second degree in violation of General Statutes § 53a-167.[6] The defendant claims that the court improperly denied his motion because there was insufficient evidence to convict him of those crimes. We affirm the conviction of the defendant as to both charges, holding that the court correctly denied his motion for a judgment of acquittal.

The following facts are relevant to the defendant's claim. At the conclusion of the state's case-in-chief, the defendant orally moved for a judgment of acquittal on all counts against him. With respect to the charge of tampering with a witness on the theory of accessory

[4] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[5] General Statutes § 53a-151 provides: "(a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

"(b) Tampering with a witness is a class D felony."

[6] General Statutes § 53a-167 (a) provides in relevant part: "A person is guilty of hindering prosecution in the second degree when he renders criminal assistance to a person who has committed a class C or class D felony or an unclassified offense for which the maximum penalty is imprisonment for ten years or less but more than one year."

liability, the defendant argued that the state had failed to produce any evidence that the defendant solicited, requested, commanded, importuned or intentionally aided Cubano in threatening the victim. As to the charge of hindering prosecution, the defendant claimed that there was insufficient evidence that he had rendered criminal assistance to Cubano. The court denied the defendant's motion.[7]

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of

---

[7] Thereafter, the defendant presented evidence to the jury. The defendant, therefore, waived his right to appellate review of the sufficiency of the evidence on the basis of the state's case alone. *State* v. *Burrus*, 60 Conn. App. 369, 370 n.2, 759 A.2d 149 (2000), cert. denied, 255 Conn. 936, 767 A.2d 1214 (2001). At the time of sentencing, the defendant filed a motion for a judgment of acquittal and a motion for a new trial. The court denied the defendant's motions.

evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citations omitted; internal quotation marks omitted.) *State* v. *Meehan*, 260 Conn. 372, 377–78, 796 A.2d 1191 (2002). "Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994).

"It is axiomatic that the state, in a criminal case, has the burden of proving every essential element of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Cobbs*, 203 Conn. 4, 11, 522 A.2d 1229 (1987). "Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. . . . But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . [while a] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) *State* v. *Ford*, supra, 230 Conn. 693.

"Moreover, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observa-

tion and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) Id.

A

We first consider the defendant's claim that there was insufficient evidence to convict him beyond a reasonable doubt of tampering with a witness on a theory of accessory liability and, therefore, that the court improperly denied his motion for a judgment of acquittal. Our Supreme Court addressed a similar claim in *State* v. *Ford*, supra, 230 Conn. 686. The state relies on *Ford* for its argument that the court properly denied the defendant's motion for a judgment of acquittal on the tampering charge, whereas the defendant relies on the same case to argue that its facts are inapposite and do not support the court's denial of the motion.

"Sections 53a-151 and 53a-8 make it a crime for a person, believing that an official proceeding is pending or about to be instituted, to solicit, request, command, importune or intentionally aid another to induce a witness to withhold testimony from that official proceeding." Id., 694. The issue in the present case, therefore, can be restated as whether the jury could have drawn reasonable inferences from the evidence to enable it to conclude beyond a reasonable doubt that it was the defendant who had caused Cubano to approach the victim and threaten her not to say "something" when she went to court. See id.

"To justify a conviction as an accessory, the state must prove both that the defendant had the intent to aid the principal and that, in so aiding, he had the intent to commit the crime. . . . Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the [principal] must be

distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and willingly assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it." (Internal quotation marks omitted.) *State* v. *McClendon*, 56 Conn. App. 500, 505, 743 A.2d 1154 (2000).

On the basis of our review of the evidence presented at trial, we conclude that there was sufficient evidence before the jury to prove beyond a reasonable doubt that it was the defendant who had caused Cubano to threaten the victim. The jury heard evidence that Cubano was the defendant's right-hand man. It also heard evidence that the defendant thought of Cubano as a brother. Cubano frequently was in the company of the defendant and often visited his apartment. Because he spent a good deal of time with the defendant, the jury reasonably could have inferred that Cubano knew about the defendant's pending court date. On the very day of the defendant's scheduled court appearance, Cubano went to the victim's school to threaten her and on that very day, after speaking to the victim, Cubano went to the defendant's home, still wearing the same clothing. Cubano had knowledge of where the victim's school was located and the time at which the victim could be found there, facts not likely known independently by Cubano. Both the defendant and Cubano gave the victim money after concluding their illegal acts. On the basis of the colloquy during the visit to the defendant's home as reported by the police, the jury reasonably could have concluded that the defendant knew that Cubano had threatened the victim.

We now analyze those facts in contrast to the facts found in *State* v. *Ford*, supra, 230 Conn. 686, and conclude that there is even more compelling reason on the facts of the present case to uphold the jury's verdict as to accessorial culpability than was present in *Ford*.

That case involved the crime of tampering, whereas the present case involves the additional crime of hindering prosecution. The two charges are intertwined in the present case. In *Ford*, some of the threatening telephone calls to a witness to a robbery came from the cell block where the accused was being held. It was not known which person out of all those persons in the defendant's cell block had made the threat. The evidence demonstrated that the caller, who was not the accused, had more than casual knowledge of the accused's case. Our Supreme Court in *Ford* concluded that the jury reasonably could have inferred that the accused intentionally gave information to other inmates to solicit their assistance. Id., 694.

Here, we know about the close relationship between the defendant and Cubano, and that Cubano had pleaded guilty to the crime as a principal. In *Ford*, as in this case, the defendant had a motive to threaten, and the principal in the crime had knowledge most probably learned from the defendant. Cubano knew of the schedule of the defendant's case and knew how to communicate with the victim, not otherwise likely to be known by him. In *Ford*, the victim's telephone number to which a threatening call had been made, was not generally known. In the present case, Cubano was not likely to know the location of the victim's school and the time at which she could be found. Additionally, in the present case, the defendant knew, shortly after Cubano had threatened the victim, of the threat.

On the basis of that evidence and the reasonable and logical inferences to be drawn therefrom, we determine that the jury could have concluded beyond a reasonable doubt that the defendant intentionally solicited, requested, commanded, importuned or aided Cubano to threaten the victim. We therefore hold that the motion for a judgment of acquittal on the accessory

charge of tampering with a witness properly was denied.

## B

The defendant's second sufficiency of the evidence claim is that the court improperly denied his motion for a judgment of acquittal on the charge of hindering prosecution in the second degree in violation of General Statutes § 53a-167. The defendant claims specifically that there was insufficient evidence that he attempted to obstruct or to deceive Williams. We disagree.

The term hindering prosecution is defined in General Statutes § 53a-165, which provides in relevant part: "As used in sections . . . 53a-167, a person 'renders criminal assistance' when, with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against, a person whom he knows or believes has committed a felony or is being sought by law enforcement officials for the commission of a felony . . . he: (1) Harbors or conceals such person . . . or (3) provides such person with . . . means of avoiding discovery or apprehension; or (4) prevents or obstructs, by means of . . . deception, anyone from performing an act which might aid in the discovery or apprehension of such person or in the lodging of a criminal charge against him . . . or (6) aids such person to protect or expeditiously profit from an advantage derived from such crime."

"A person's intent is to be inferred from his conduct and the surrounding circumstances and is an issue for the [trier of fact] to decide." (Internal quotation marks omitted.) *State* v. *Smith*, 73 Conn. App. 173, 181, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002). "Because direct evidence of the accused's state of mind is rarely available, intent is often inferred from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal

quotation marks omitted.) Id. Furthermore, as we previously stated, members of a jury are not expected to lay aside matters of common knowledge and their life's experience when they evaluate the evidence before them. *State* v. *Ford*, supra, 230 Conn. 693.

In this case, there was substantial evidence before the jury from which it reasonably could infer beyond a reasonable doubt that the defendant knew that Cubano had threatened the victim and intended to hide or to protect Cubano by deceiving Williams. When the defendant responded to Williams' knock on his apartment door, he invited the officer to step inside. Williams recognized Cubano in the apartment from the description provided by the victim. The defendant spontaneously told Williams that he had been to court that day, that everything was okay and that there was no need for Williams to be there. Williams asked the defendant if Cubano was in the apartment. The defendant replied that Cubano was not there and that he had never heard of Cubano. Williams specifically asked the defendant if one of the men watching television was Cubano. The defendant denied Cubano's presence in his home. There was no indication that the defendant did not understand Williams' questions. Furthermore, when the second police officer asked the defendant in Spanish whether he knew Cubano, the defendant denied that he knew Cubano. The jury also knew that Cubano had pleaded guilty to the crime of tampering with a witness.

Because there was sufficient evidence before the jury from which it reasonably could have concluded that the defendant hindered prosecution, the court properly denied the motion for a judgment of acquittal.

II

The defendant also claims that his right to due process was violated when the court instructed the jury that it could consider the allegations of accessory to

tampering with a witness and hindering prosecution as consciousness of guilt evidence that the assault charges had been committed.[8] The defendant specifically argues that the instruction violated his constitutional right to due process because (1) the judge invaded the province of the jury, (2) the charge permitted the state to argue an unsupported inference of consciousness of guilt and (3) if the evidence was insufficient to support the jury's conviction on the tampering charge, the court abused its discretion by admitting the evidence because its prejudicial effect outweighed its probative value where the jury considered the evidence as consciousness of guilt.[9] We disagree.

When it charged the jury, the court gave an instruction on evidence as consciousness of guilt. We set forth the court's charge on that subject in its entirety: "All right. I want to talk to you about a concept in law called consciousness of guilt. In any criminal trial, it's permissible for the state to show that conduct or statements by a defendant after the time of the alleged offense may fairly have an influence by the criminal act. That is, the conduct or statements would tend to show that the defendant was conscious of his own guilt, and his actions were in accordance with that guilty mind.

"In this regard, you have heard evidence that on January 21, 1999, the defendant had been arrested for the sexual abuse claims made by [the victim]. You also heard evidence that on February 3, 1999, the defendant's

---

[8] In his brief to this court, the defendant states in his instructional claim that the court charged the jury that it could consider the *allegations* of accessory to tampering with a witness and hindering prosecution. In its charge, the court refers to the evidence of those charges that the jury heard, not the allegations themselves. We assume that the defendant intended to use the word "evidence" rather than "allegations."

[9] We need not review the third claim because we have concluded that the evidence was sufficient to support the conclusion of guilt as to the charge of tampering with a witness on an accessory theory of liability.

first scheduled court date—that on that day [Cubano] attempted to induce the alleged victim not to testify in the sexual assault case against the defendant in exchange for the safety of her and her mother and by giving [the victim] money.

"If you find by either direct or circumstantial evidence that the defendant either attempted to influence or to deter a witness from testifying through [Cubano], you may fairly infer guilty knowledge of the underlying charges in counts one through four, (the first set of charges, the assault charges) but not counts five through six (tampering and hindering).

"What I'm laying out for you is consciousness of guilt. Some evidence of consciousness of guilt, if you think it is such, applies to some of the counts and not some of the other counts. And I'm just breaking that down for you now.

"With respect to the state's claim that through [Cubano]—that on February 3, 1999, the defendant attempted to influence the testimony of [the victim], that evidence applies only through counts one through four. These counts, one through four, are the original sexual assault and kidnapping counts against [the defendant].

"The consideration of this evidence is confined to counts one through four, to the extent, if at all, that the state has proven that the defendant attempted to influence [the victim] through [Cubano]. If you find that the state has proven such conduct to you on the part of the defendant, this does not raise a presumption of guilt. It is circumstantial evidence, and you may and may not infer consciousness of guilt from it. It is to be given the weight to which you think it is entitled under the circumstances, and again, with respect to that claim, that applies only to counts one through four.

"You have also heard testimony that on February 3, 1999, the defendant, while at home, told a police officer he did not know anyone by the name of [Cubano] and that he attempted to conceal the identity of [Cubano]. Whether or not he did so is for you to determine. If you find that the defendant concealed [Cubano] or gave false information to the police on February 3, 1999, concerning [Cubano], then in accordance with these instructions, you may decide whether or not such actions show consciousness of guilt with respect to counts one through five (the charges of assault and tampering with a witness).

"So, concerning those allegations, they apply through counts one through five. They do not apply, at all, to count six. Consciousness of guilt does not apply at all, in this case, to count six. The first evidence I told you about applies to counts one through four, and the second evidence I just commented on applies to counts one through five.

"Again, my commenting on this does not, in any way, give this any extra, special weight. It's my obligation to explain all the law to you, including consciousness of guilt. So, please don't think that I'm trying to highlight it in any way. I've got to deliver all of the law to you.

"Okay. Let me make this clear to you. It is up to you as judges of the facts to decide whether the state has proved any alleged conduct or statements and, if so, whether or not whatever has been proven reflects a consciousness of guilt and to consider the same in your deliberations in conformity with these instructions.

"Again, if you find any consciousness of guilt, it does not raise any presumption at all. You consider it just like any other evidence in the case. Okay."

At the end of the charge, defense counsel stated several objections.[10] During its deliberations, the jury sent two notes to the court, essentially asking whether consciousness of guilt applied to the fifth count and for the court to restate the portion of the charge that explained the concept of consciousness of guilt.

In response to the jury's requests, the court instructed the jury: "With respect to the first question, does consciousness of guilt apply to the fifth count. The answer is as follows: Yes, but only insofar as you find, if at all, that on February 3, 1999, when the police came to the defendant's home, he either concealed the identity and presence of [Cubano] or gave the police false information about his knowledge of [Cubano]. Again, whether or not he did either must be proven by the state." As to the second part of the note requesting a restatement of the charge on consciousness of guilt, the court repeated the instruction it had given previously.

The defendant claims that if the jury could not find him guilty of tampering with a witness as an accessory and hindering prosecution, the evidence as to those two crimes could not be considered as consciousness

---

[10] Defense counsel stated: "I just want to put on the record that I object to the consciousness of guilt charge because I think facts are insufficient to warrant a consciousness of guilt instruction, especially, as to the sexual assault charges. . . .

"And second, the consciousness of guilt is a form of circumstantial evidence. I thought it was fairly covered in Your Honor's charge regarding circumstantial evidence. There's no reason why extra attention should be called to it. This type of evidence and its relevance should be left to argument to the jury. And I posit that the consciousness of guilt instruction gives undue influence to only one aspect of the evidence. . . .

"There's just one other matter, Your Honor. In regard to the hindering prosecution . . . I believe that the charge when the court said that you heard testimony that on February 3, 1999, the defendant while at home told police he did not know anyone by the name of [C] and attempted to conceal the identity of [C]. That could have been in your consciousness of guilt charge, too. I thought that was an unfair marshaling of the evidence and thereby [an] invasion of the province of the jury . . . ."

of guilt in the assault crimes. In essence, his claim is that the state used those two alleged crimes to bootstrap the state's evidence of the assault charges to allow the jury to convict the defendant on the assault charges.

"A trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection for a crime, such as flight, concealment of evidence, or a *false statement*, [which] is ordinarily the basis for a charge on the inference of consciousness of guilt. . . . The trial court, however, should admit only that evidence where its probative value outweighs its prejudicial effect. . . . In seeking to introduce evidence of a defendant's consciousness of guilt, [i]t is relevant to show the conduct of an accused . . . *as well as any statement made by him* subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. . . . [M]isstatements of an accused, which a jury could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Riser*, 70 Conn. App. 543, 547–48, 800 A.2d 564 (2002).

Our Supreme Court addressed a claim of instructional error with respect to consciousness of guilt evidence in *State* v. *Bell*, 188 Conn. 406, 450 A.2d 356 (1982). In *Bell*, the accused was charged with two separate robberies and escape from custody; the charges were tried together. Our Supreme Court concluded that the evidence of escape from custody properly was admitted "to show consciousness of guilt." Id., 412. "It is well established that flight of a person accused of a crime is an element which, when considered with other facts of the case, is relevant to the accused's guilt." Id. The court concluded that no manifest injustice or abuse of

discretion occurred when the evidence was admitted. The court stated that the evidence was not being offered to prove a crime but to demonstrate consciousness of guilt and charged "that guilt of one offense did not necessarily prove guilt of other offenses." Id.

In this case, the evidence concerning the events of February 3, 1999, was relevant to the charges of tampering with a witness as an accessory and hindering prosecution. "Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity . . . ." (Internal quotation marks omitted.) *State* v. *Middlebrook*, 51 Conn. App. 711, 720–21, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999).

As we determined in part I, the evidence regarding the manner in which Cubano threatened the victim and the defendant's behavior in his apartment on February 3, 1999, was sufficient for the jury to conclude that he sought to conceal Cubano because he knew that Cubano had threatened the victim. The jury also knew that the parties had stipulated to the fact that Cubano had pleaded guilty to the charge of tampering with a witness. The court also made it clear that the consciousness of guilt evidence of tampering as an accessory applied to the assault charges, but not to the charge of tampering itself or to the hindering the prosecution charge. Likewise, the court made it clear that the consciousness of guilt evidence of hindering prosecution applied to the assault and tampering charges, but not to the charge of hindering prosecution. The court's charge, therefore, did not permit the state to argue or the jury to conclude that the consciousness of guilt evidence as to tampering proved the crime of tampering or that the consciousness of guilt evidence of hindering prosecution proved the crime of hindering prosecution.

The defendant also claims that the court invaded the province of the jury by giving a charge of consciousness of guilt. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 668, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002). "As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) Id., 669. "It is to be presumed that the jury followed the court's . . . instructions unless the contrary appears." (Internal quotation marks omitted.) Id., 660.

When the court instructed the jury on consciousness of guilt, it included the following instruction: "Again, my commenting on this does not, in any way, give this any extra, special weight. It's my obligation to explain all the law to you, including consciousness of guilt. So, please don't think that I'm trying to highlight it in any way. I've got to deliver all of the law to you.

"Okay. Let me make this clear to you. It is up to you as judges of the facts to decide whether the state has proved any alleged conduct or statements and, if so, whether or not whatever has been proven reflects a consciousness of guilt and to consider the same in your deliberations in conformity with these instructions. Again, if you find any consciousness of guilt, it does not raise any presumption at all. You consider it just like any other evidence in the case."

The court's instruction did not usurp the jury's fact-finding role. The instruction explained how the evidence of consciousness of guilt may be used and pointedly explained that the jury alone was to determine the

facts. There is nothing to suggest that the jury did not follow the court's instruction.

The judgments are affirmed.

In this opinion the other judges concurred.