STATE OF CONNECTICUT *v.* MADALENA SILVA
(AC 25517)

McLachlan, Harper and McDonald, Js.

Argued April 24, 2008—officially released March 31, 2009

*Kim Coleman*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Craig P. Nowak*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. This appeal is before us on remand from the Supreme Court. In *State* v. *Silva*, 285 Conn. 447, 461, 939 A.2d 581 (2008), the Supreme Court reversed our decision in *State* v. *Silva*, 93 Conn. App. 349, 889 A.2d 834 (2006), with direction to consider the

remaining claim of the defendant, Madalena Silva, on appeal. The remaining claim is that the trial court improperly instructed the jury as to consciousness of guilt.[1] We affirm the judgment of the trial court.

The facts relevant to our resolution of the remaining claim are as follows. "At about 5 p.m. on June 22, 2003, the defendant's brother was involved in an automobile collision on North Avenue in Bridgeport. All three vehicles involved in the collision had to be towed from the scene because of major damage, and the defendant's brother complained of neck and back pain. Officers Jason Ferri and Todd Sherback of the Bridgeport police department, who were on routine motor patrol, went to the accident scene to help the investigating officer, Officer Mark Gudauskas, complete necessary paperwork. To avoid obstructing the heavy rush hour traffic, Ferri and Sherback parked their police cruiser in a nearby private parking lot.

"As the defendant drove by the scene, Ferri and Sherback observed her stop abruptly on the street, back up, execute a three point turn and back quickly into the parking lot where they had parked their police cruiser, nearly causing a collision. They also saw that her vehicle did not have a required front license plate. The officers told the defendant that they were going to issue an infraction ticket for unsafe backing and no front license plate. At that time, the officers asked the defendant for her driver's license, automobile registration and insurance card. She asked to be let alone. To the officers' second request, she replied, 'You Bridgeport cops are all the f__king same. To protect and serve? Yeah right, my ass.' When the officers repeated their request, she

[1] The dissent concludes that the defendant improperly was charged in this case in violation of the double jeopardy clause of the United States constitution. Because this issue was never raised or addressed at trial, on appeal to this court or our Supreme Court or on remand, we will not consider it sua sponte.

stated, 'F__k you. I ain't giving you s__t, asshole. I'm taking my brother to the hospital, and you are not f__king stopping me.' She was loud and belligerent, stamping her foot, and a crowd of twenty-five to thirty people gathered. At that time, the officers did not issue the infraction ticket because the defendant became very loud and angry when asked for her registration. At some unknown time, however, the officers did issue an infraction ticket.

"Ferri and Sherback decided to arrest the defendant for breach of the peace and interfering with an officer after her belligerent responses to their requests. The defendant's mother, who was present with the defendant's father, began to interfere with the officers' investigation by stating that her daughter had done nothing wrong. Because of this, the defendant was not arrested. At that time, as the officers tried to talk to the defendant's mother, the defendant immediately ran into the street, entered a vehicle and drove away, leaving her automobile in the parking lot. Ferri had told the defendant not to leave the scene and then asked the defendant's mother to use her cellular telephone to call the defendant. The defendant's mother explained to the officer that the defendant was bringing her brother to a hospital. After speaking with the defendant, her mother told the officers that the defendant would return after she went to the hospital.

"The officers waited for one-half hour and conferred with their supervisor, Sergeant Stephen Lougal, whom they called to explain that they intended to arrest the defendant. They also wanted Lougal to speak to the defendant's mother about the mother's complaint that her son had not received medical assistance. The officers then went to the nearer of the two hospitals in Bridgeport. They located the defendant at the emergency room and arrested her for breach of the peace and interfering with an officer. When the officers

approached her, the defendant stated to them, 'Not you assholes again,' and told her friend the officers were coming for her." *State* v. *Silva,* supra, 93 Conn. App. 352–54.

"The state charged the defendant in an amended information with two counts of interfering with a police officer and two counts of breach of the peace. The first count of interference with a police officer charged that the defendant did so by saying to [the officer] when requested to produce [her] license, registration and insurance information during a motor vehicle stop, F__k you. I ain't giving you s__t, asshole . . . . The second count charged the defendant with interfering with an officer by running from [the officer] and fleeing on foot across North Avenue and entering the driver's side of an unidentified green vehicle which left the scene at a high rate of speed, after being instructed by [the officer] not to leave the scene . . . ." (Internal quotation marks omitted.) Id., 351.

The court rendered judgment of conviction, after a jury trial, of two counts of interfering with an officer in violation of General Statutes (Rev. to 2003) § 53a-167a. This appeal followed.

The defendant claims that the court improperly charged the jury with regard to consciousness of guilt. Specifically, the defendant claims that the instruction was improper because (1) it was imbalanced without a reference to her alleged innocent explanation for leaving the scene[2] and (2) only unexplained flight may constitute consciousness of guilt. We disagree.

[2] The court's instruction did not marshal the evidence that the jury could consider as reflecting the defendant's consciousness of guilt. The court did instruct the jury, however, as to the theory of consciousness of guilt and directed it to determine for itself whether the defendant's statements or conduct reflected consciousness of guilt. Although courts are urged to act within their discretion by fairly marshaling the evidence, we have not required them to do so. See *State* v. *Feliciano,* 74 Conn. App. 391, 400, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003).

The state based its request for a consciousness of guilt instruction on the defendant's flight from the scene and a subsequent statement that she made. Ferri testified that he and Sherback "instructed [the defendant] not to leave the scene." Sherback testified that when the defendant's parents arrived, she "immediately darted across [the street] . . . hopped into a small green vehicle and . . . took off . . . ." The defendant also testified that she observed an officer look at her before she crossed the street, point at her and state, "you're not going anywhere . . . ." The defendant testified that she did not respond to the officer but "proceeded to cross the street . . . walked over to [her mother's] car and got in and took [her brother to the hospital]." The defendant's mother testified that the defendant left with her brother more than twenty minutes after the accident had happened and that at no point did the mother ever consider calling an ambulance because "[t]here was enough of us there, and there was really no reason . . . ."

The statement at issue was made after the officers arrived at the hospital to arrest the defendant. Maryann Lee, an acquaintance of the defendant, was called as a witness by the defendant and testified that Lee saw two police officers approaching and stated, "I think there's two police officers walking toward you." Lee testified that the defendant replied, "well, I think they're coming for me . . . ." Lee further testified that the defendant "looked at [the two officers], and all she said was, I have to go in and tell my father or talk to my father. Something like that."

On the basis of these two issues, the state requested that the court charge the jury on consciousness of guilt. The defendant objected, arguing that her conduct was not indicative of guilt. Over the defendant's objection, the court instructed the jury regarding consciousness of guilt. The court stated: "In any criminal trial, it is

permissible for the state to show that conduct or statements made by a defendant . . . after the time of the alleged offense may fairly have been influenced by the criminal act. That is, the conduct or statements show a consciousness of guilt. It does not raise a legal presumption of guilt but is to be given the weight to which the jury thinks it is entitled under the circumstances shown. It is up to you as judges of the facts to decide whether the statements or conduct of the defendant reflect consciousness of guilt and to consider such in your deliberations in conformity with the instructions."

## I

First, the defendant claims that the instruction was improper because the court failed to present the jury with the specific evidence that it could consider indicative of consciousness of guilt and the evidence that would supply an innocent explanation.

As a preliminary matter, we must determine whether the defendant preserved her claim for appellate review. The state requested a jury instruction regarding consciousness of guilt on the bases of evidence that the defendant ran from the scene after the police directed her to stay and her statement to a friend that the police were coming for her. The defendant preserved her objection to the inclusion of a consciousness of guilt charge by arguing that there were innocent explanations for her actions. The defendant argues that because she objected to the instruction's inclusion, she also preserved her argument that her innocent actions should have been included in the charge. The state argues that the defendant did not preserve her claim because she failed to object to the charge on those grounds and failed to take an exception following the charge. We agree with the state.

Our Supreme Court has stated: "It is well settled . . . that a party may preserve for appeal a claim that an

instruction, which was proper to give, was nonetheless defective either by: (1) submitting a written request to charge covering the matter; or (2) taking an exception to the charge as given. . . . Moreover, the submission of a request to charge covering the matter at issue preserves a claim that the trial court improperly failed to give an instruction on that matter. . . . In each of these instances, the trial court has been put on notice and afforded a timely opportunity to remedy the error. . . . *It does not follow, however, that a request to charge addressed to the subject matter generally, but which omits an instruction on a specific component, preserves a claim that the trial court's instruction regarding that component was defective.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Gonzalez*, 106 Conn. App. 238, 244, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008).

The defendant in this case did not object to the specific contents of the charge or request that the court marshal the evidence for the jury. Following the charge, defense counsel indicated that she had no objection concerning the instruction. The discussion of an instruction prior to the charge does not preserve all aspects of the issue for review. Id., 245. We must therefore conclude that the defendant failed to preserve the claim that her innocent explanations should have been included in the consciousness of guilt instruction.[3]

II

The defendant next claims that the court improperly charged the jury with regard to consciousness of guilt

---

[3] The defendant has not requested review under the plain error doctrine; see Practice Book § 60-5; or under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will not engage in a level of review that is not requested, briefed or argued by the parties. *State* v. *Klinger*, 103 Conn. App. 163, 169, 927 A.2d 373 (2007).

because she had an innocent explanation for her flight.[4] She argues that she was taking her injured brother to the hospital emergency room and that even the arresting officers admitted that the defendant's purpose in leaving the scene was to take her brother to the hospital. The defendant contends that there was no unexplained flight in this case and, therefore, no possible inference of consciousness of guilt.

To evaluate the defendant's preserved claim, we begin with the applicable standard of review. A court's instructions to a jury are reviewed under the abuse of discretion standard. "The decision whether to give an instruction on flight, as well as the content of such an instruction, if given, should be left to the sound discretion of the trial court." *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998). To prevail on her claim, the defendant must establish both that the court abused its discretion and that she suffered harm as a result.[5] See *State* v. *Hinds*, 86 Conn. App. 557, 568, 861 A.2d 1219 (2004), cert. denied, 273 Conn. 915, 871 A.2d 372 (2005).

Undisputed evidence that a defendant acted because of consciousness of guilt is not required before an instruction is proper. "Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as

---

[4] The defendant did not argue in her brief that she had an innocent explanation for her statement at the hospital. She argued only that she had an innocent explanation for her flight. The defendant did, however, raise the issue at trial and during her argument before this court. The state has not argued that the defendant has waived her objection to the consciousness of guilt charge.

[5] The burden rests on the defendant because consciousness of guilt claims do not involve a constitutional issue. See *State* v. *Luster*, 279 Conn. 414, 421–22, 902 A.2d 636 (2006).

well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . Moreover, [t]he court [is] not required to enumerate all the possible innocent explanations offered by the defendant." (Internal quotation marks omitted.) *State v. Figueroa*, 257 Conn. 192, 196–97, 777 A.2d 587 (2001). "Once [relevant] evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence." (Internal quotation marks omitted.) *State v. Jimenez*, 74 Conn. App. 195, 213, 810 A.2d 848 (2002), cert. denied, 262 Conn. 947, 815 A.2d 677 (2003).

Ambiguity does not render a consciousness of guilt instruction improper. "If there is a reasonable view of the evidence that would support an inference that [a defendant fled] because he was guilty of the crime and wanted to evade apprehension—even for a short period of time—then the trial court is within its discretion in giving such an instruction because the fact finder would be warranted in drawing that inference." *State v. Scott*, 270 Conn. 92, 105–106, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). Our Supreme Court has stated: "[E]ven if the statement were susceptible to different interpretations, the trial court did not abuse its discretion in determining that the defendant's assertion was relevant." *State v. Gray*, 221 Conn. 713, 725, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992).

For the defendant to prevail in the present case, she would have to show that her flight from the scene of the accident and her statement to her friend at the hospital could not reasonably have supported an inference of consciousness of guilt. See *State v. Hinds*, supra, 86 Conn. App. 565. There was adequate evidence to support an inference that the defendant fled because she was guilty and wanted to evade apprehension. The

defendant ran away from police officers who had instructed her not to leave, crossed a street, entered her mother's car and drove away. Although the defendant presented evidence suggesting that her only motivation was to take her brother to the hospital, the jury was free to discredit her testimony and to find that her flight was motivated by her desire to evade capture. See *State v. Jackson*, 75 Conn. App. 578, 589, 816 A.2d 742 (2003). The defendant's statement that the police were coming for her, especially coupled with her statement that she had to go with them, also was adequate to support an inference of consciousness of guilt. Although the defendant presented evidence that she simply assumed that the police were coming for her because they walked toward her, the jury was free to draw the reasonable inference that she knew that the police were coming for her because she was guilty of interfering with a police officer. See id.

We conclude that the court properly instructed the jury that it was to determine for itself "whether the statements or conduct of the defendant reflect consciousness of guilt . . . ." The jury was free to decide what evidence was accurate, what inferences could be drawn from that evidence and what weight to afford those inferences. Accordingly, we conclude that the court did not abuse its discretion by including a consciousness of guilt instruction in its charge to the jury.

The judgment is affirmed.

In this opinion HARPER, J., concurred.

MCDONALD, J., dissenting. This case concerns two counts of interfering with a Bridgeport police officer, Jason Ferri, when Ferri attempted to issue an infraction ticket to the defendant, Madalena Silva, for minor motor

vehicle offenses.[1] The defendant was convicted on the first count of interfering with Ferri for telling him that she would not do so when he requested that she produce her driver's license, automobile registration and insurance documents, and on the second count for running from Ferri, and fleeing across a street and entering a motor vehicle that left the area after Ferri had told her not to leave the scene. As to the first count, the state's evidence was that the defendant answered Ferri's document request by unmanneredly stating that she would not do so, that she was taking her brother to a hospital and that the officers were not stopping her. As to the second count, the state's evidence was that despite Ferri's order to stay, the defendant immediately left in a car other than her own when her mother began arguing with Ferri that the defendant had done nothing wrong.

The court charged the jury in part: "In any criminal trial, it is permissible for the state to show that conduct or statements made by a defendant otherwise *after the time of the alleged offense* may fairly have been influenced by the criminal act. That is, the conduct or statements show a consciousness of guilt." (Emphasis added.)

The state argued in its brief before us that the defendant's conduct in fleeing the scene supported the court's instruction. Our Supreme Court has stated: "The probative value of flight as evidence of a defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the

---

[1] The prosecutor stated in summation at trial that the ticket for improper backing and no front license plate "might seem frivolous to some people."

crime charged." (Internal quotation marks omitted.) *State* v. *Scott*, 270 Conn. 92, 105, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). In oral argument before us, the state conceded that consciousness of guilt from flight would not apply to the second count because interfering with Ferri by leaving was in the process of being committed. Because the jury was instructed that it was free to use evidence of the defendant's conduct, here, flight, to find consciousness of guilt of that flight, the instruction was, I would conclude, improper as to count two.

As to count one, the state argued before us at oral argument that the instruction as to the conduct, in this case, flight, was proper because the offense specified in count one was completed before the defendant left the scene. I reject that argument because there was no evidence of flight to support an inference of consciousness of guilt of the crime charged in count one.

There was no evidence that a sense of guilt over her refusal to produce documents influenced the defendant to leave the scene. To the contrary, the state's evidence was that the defendant had already begun to leave when she refused to produce the documents. Thus, the state's evidence established that the defendant's previous determination to take her brother immediately to the hospital caused her to refuse the officer's request and to leave immediately.

Also, there was no evidence that the defendant left because Ferri intended to charge her with breach of the peace and interfering with an officer, the charges for which she was on trial. There was no evidence that the officers told the defendant that she was to be arrested for breach of the peace and interfering an officer, and there was no evidence that she was arrested at the scene. The only evidence was that Ferri told the defendant that an infraction ticket was to be issued for

unsafe backing and for having no front license plate on her vehicle, charges for which she was not on trial.

Moreover, flight giving rise to a finding of a guilty conscience means running away or an escape from justice. American Heritage Dictionary. Black's Law Dictionary defines such flight as leaving a jurisdiction or concealing one's whereabouts within a jurisdiction to avoid being brought to justice. The defendant's conduct did not approach flight to conceal her identity or to hide her whereabouts. The undisputed evidence was that the defendant told Ferri that she was leaving to take her brother to the hospital and that Ferri had her car and her mother at the scene, that the defendant did take her brother to the hospital and that Ferri went to the nearest hospital emergency room and there arrested the defendant.

I also would reject the state's argument because in this case the state's evidence concerned (1) interference with one officer, Ferri; (2) one transaction made up of continuous acts of refusing to supply information as she was leaving to take her brother to the hospital and would not be stopped by the officers, and contrary to Ferri's instructions, leaving; and (3) the same offense, a violation of General Statutes § 53a-167a. See *State* v. *D'Antonio*, 274 Conn. 658, 715–17, 877 A.2d 696 (2005), citing *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 1062 (1991). I would conclude that the offense set forth in count one was not distinct from the offense in count two and was not completed before the defendant left the scene, but rather that the conduct charged in the two counts was but one distinct act. See *State* v. *D'Antonio*, supra, 717. Addressing the state's argument, I would hold under the double jeopardy clause of the United States constitution that the state may not charge the defendant in multiple counts of interfering with one officer for the words spoken as she was leaving

the scene and for leaving. See *State* v. *Nixon*, 92 Conn. App. 586, 886 A.2d 475 (2005).

Accordingly, I would order a new trial as to both counts.[2] The undisputed evidence was that the defendant's brother's vehicle had to be towed from the scene, the defendant's brother complained of injuries and the defendant's mother gave the defendant the mother's car keys to take the brother to the hospital. The application of consciousness of guilt unfairly characterized conduct of the defendant, who was acting as a dutiful daughter and a concerned sister, and as part of a closely knit family. These family values once made our Connecticut cities, such as Bridgeport, places of freedom from crime and of opportunity. Today, many trace the cities' fall to the loss of these values. Accordingly, in this case, I would conclude that the instruction deprived the defendant of a fair trial.

Accordingly, respectful of the majority, I dissent.

---

[2] On remand, I do not reach the merging the multiple convictions and sentences on the two counts.