STATE OF CONNECTICUT *v.* AUGUSTUS J. SIMMONS
(AC 24163)

Lavery, C. J., and Foti and Schaller, Js.

Argued September 23—officially released December 14, 2004

*Augustus J. Simmons*, pro se, the appellant (defendant).

*Erik T. Lohr*, special deputy assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and *Christopher Parakilas*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The pro se defendant, Augustus J. Simmons, appeals from the judgment of conviction, rendered after a trial to the court, of breach of the peace in the second

degree in violation of General Statutes § 53a-181,[1] disorderly conduct in violation of General Statutes § 53a-182[2] and interfering with an officer in violation of General Statutes § 53a-167a.[3] On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction with regard to each of the offenses, (2) the conviction of breach of the peace and disorderly conduct violated his constitutional right to free speech and (3) the court abused its discretion in permitting the state to amend the information, thereby adding new charges, prior to trial.[4] Additionally, we notified the parties to be prepared to address at oral argument the issue of whether, under the circumstances of this case, disorderly conduct constituted a lesser included offense of breach of the peace in the second degree. We reverse in part the judgment of the trial court.[5]

---

[1] Although the charging document does not refer specifically to a subsection of General Statutes § 53a-181, the record reflects, and the state agrees, that the defendant was convicted under § 53a-181 (a) (1), which provides: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." The court specifically referred to the provisions of this subsection of the statute in making its findings and rendering its guilty verdict.

[2] Although the charging document does not refer specifically to a subsection of General Statutes § 53a-182, the record discloses that the court, while not so specifying, implicitly found the defendant guilty under § 53a-182 (a) (1), which provides: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior . . . ."

[3] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

[4] In his brief, the defendant also alleges that he owns the property upon which the incident underlying this appeal occurred and that he therefore had a right to restrict access to the property in the manner in which he did. This is not a legitimate issue in this case, and we decline to address it.

[5] The court also found that the defendant was in violation of his probation. The court imposed a total effective sentence of one year imprisonment. Although the defendant has been released from incarceration and his sen-

On the basis of the evidence presented at trial, the court reasonably could have found the following facts.[6] At approximately 6:50 p.m. on March 14, 2003, Matthew Freiman and Justin Shaw, both of whom were acting in their capacities as members of the Connecticut Army National Guard, were conducting routine security patrols around the perimeter of Bradley International Airport in Windsor Locks. Freiman and Shaw were in uniform and were traveling in a camouflaged pickup truck. The guardsmen drove across a spectator lot, where members of the public are permitted to observe airplanes taking off and landing. The guardsmen stopped their vehicle when they observed a rope, strung between a security fence and a post, blocking their path of travel around the perimeter of the airport. The defendant had assembled this obstacle. The guardsmen immediately encountered the defendant as he approached their vehicle. The defendant was flailing his arms and yelling.

When the defendant approached the truck, he shouted profanities at the guardsmen; he told them that they were on his property and that military personnel did not belong there. Freiman identified himself and attempted to calm the defendant. Unsure of the defendant's motives, the guardsmen reported the defendant's actions to their superiors and left the scene. Michael Allard, a state police trooper, responded to the scene shortly thereafter. When Allard asked the defendant what had transpired, the defendant stood face-to-face

tence has expired, this matter is not moot. See *State* v. *McElveen,* 261 Conn. 198, 213–16, 802 A.2d 74 (2002); *Barlow* v. *Lopes,* 201 Conn. 103, 112, 513 A.2d 132 (1986); *State* v. *Scott,* 83 Conn. App. 724, 726–27, 851 A.2d 353 (2004).

[6] The record does not contain either a written memorandum of decision or a signed transcript of proceedings in which the court stated its decision orally. The defendant, however, has filed an unsigned transcript that contains the court's oral decision in this matter, and we deem this transcript to be a sufficient basis upon which to review the court's findings and legal conclusions.

with Allard and, using profanities, shouted that he was on his own property, that he could do whatever he wanted to do and that Allard had no right to be there. Allard requested that the defendant step back and submit to a patdown search. The defendant did not comply with this request and continued to speak to Allard in an agitated tone, flailing his arms as he did so. Allard attempted physically to force the defendant to turn around, but the defendant resisted. Allard ultimately restrained the defendant and conducted a patdown search, despite the defendant's physical and verbal protests. Kenneth Hardick, another police trooper who arrived on the scene during the struggle, subsequently arrested the defendant.

## I

The defendant first claims that the evidence was insufficient to convict him of any of the three crimes of which he stands convicted. We disagree.[7]

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [fact finder] must find every element proven beyond a reasonable doubt in order to

---

[7] We determine, in part IV, that disorderly conduct is a lesser included offense of breach of the peace in the second degree. We determine, in part IA, that the evidence was sufficient to convict the defendant of breach of the peace in the second degree. Having determined that the evidence was sufficient to convict the defendant of this greater offense, we likewise conclude that the evidence was sufficient to convict the defendant of the lesser offense of disorderly conduct.

find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [fact finder] to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the [finder of fact] are so unreasonable as to be unjustifiable." (Citation omitted; internal quotation marks omitted.) *State* v. *Carcare*, 75 Conn. App. 756, 778–79, 818 A.2d 53 (2003).

A

We first consider the defendant's claim that there was insufficient evidence to convict him beyond a reasonable doubt of breach of the peace in the second degree. The state bore the burden of proving beyond a reasonable doubt that (1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) that this conduct occurred in a public place and

(3) that the defendant acted with the intent to cause inconvenience, annoyance or alarm, or that he recklessly created a risk thereof.

Here, the court specifically found that the defendant intentionally acted in an aggressive and threatening manner. In this regard, the court found that the defendant aggressively approached the guardsmen while flailing his arms and that he spoke to them in a loud voice, shouting profanities and ordering them off of the property. The court found that the defendant's conduct caused the guardsmen "to fear that something might happen," and motivated them to leave the scene of their assigned duties. The court also found that the defendant's conduct occurred in a public place in that the spectator lot is property maintained for use by the public. All of the court's findings in this regard are supported by the evidence presented at trial.

Further, the record supports the court's finding that the defendant engaged in such conduct intending to cause inconvenience, annoyance or alarm. "[I]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Weaver*, 85 Conn. App. 329, 344, 857 A.2d 376, cert. denied, 271 Conn. 942, 861 A.2d 517 (2004). The defendant testified that his goal was to expel the guardsmen from the spectator lot. The defendant's tumultuous and threatening behavior clearly supported the court's finding beyond a reasonable doubt that the defendant intended to cause inconvenience, annoyance or alarm.

B

The defendant next claims that the evidence did not support his conviction of interfering with an officer.

The state bore the burden of proving beyond a reasonable doubt that (1) the defendant obstructed, resisted, hindered or endangered any peace officer and (2) that such conduct occurred in the performance of the peace officer's duties.

Our review of the record discloses that the evidence was sufficient to support the conviction. Allard testified that when he arrived at the spectator lot, he encountered the defendant, who was sitting in a vehicle. Allard recalled that when he asked the defendant what had occurred, the defendant exited his vehicle and "got into [his] face so close that [he] felt that it was necessary to have [the defendant] back away." The defendant responded to Allard's inquiries by using profanities and demanding that Allard leave the property. Allard further testified that, when he instructed the defendant to calm down and to turn around so that he could conduct a patdown search, the defendant refused to comply. Allard also testified that he attempted physically to turn the defendant around and that the defendant pulled away from him. Finally, Allard testified that he had to use physical force to restrain the defendant against the front of his vehicle because of the defendant's continued efforts to get away from him. Allard's account of the defendant's behavior as hostile, aggressive and noncompliant with his demands was corroborated by the testimony of other police officers who arrived on the scene during these events. In addition to making findings concerning the defendant's conduct, the court found that Allard was in uniform and in the performance of his official duties as a state trooper. These findings are also supported by the evidence presented at trial.

Accordingly, the evidence amply supported the court's findings beyond a reasonable doubt that the defendant's actions impeded, and therefore hindered, Allard's performance of his duties as a police officer assigned to investigate the incident at the spectator lot.

## II

The defendant next claims that his conviction for breach of the peace violated his constitutional right to free speech. This claim is totally without merit. The record reflects that the court's judgment was based on the defendant's conduct and not his speech. Although the court, in its decision, referred to the defendant's use of profanity, it clearly did so because the defendant's use of profanity was a component of his hostile and aggressive conduct. For instance, the court referred to the fact that the defendant's use of profanity, combined with his physical movements and the fact that he was yelling at the guardsmen, caused the guardsmen to fear the defendant and to leave the scene. The record reflects that the court deemed the defendant's conduct to be the only appropriate consideration in finding that he had violated the breach of the peace statute.

## III

The defendant next claims that the court abused its discretion in allowing the state to amend the information prior to trial. We disagree.

The record reflects that the defendant was initially charged with breach of the peace in the second degree. Prior to the start of trial, the state filed a subsequent information that included the charges of disorderly conduct and interfering with an officer.[8]

A prosecutor has broad authority to amend the information, prior to the commencement of trial pursuant to Practice Book § 36-17.[9] *State* v. *Grant*, 83 Conn. App.

[8] The record reflects that, after the state filed its substitute information, the court informed the defendant that it would grant the defendant a continuance to permit him to consult with an attorney. The defendant declined this invitation and did not request that the court grant him a continuance.

[9] Practice Book § 36-17 provides in relevant part: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. . . ."

90, 97, 848 A.2d 549, cert. denied, 270 Conn. 913, 853 A.2d 529 (2004). The defendant has failed to carry his burden of demonstrating that the court abused its discretion by permitting the state to file the substitute information.

IV

We next consider whether, under the circumstances of this case, disorderly conduct is a lesser included offense of breach the of peace in the second degree.

Generally, the *Blockburger* test is used to determine if an offense is a lesser included offense and therefore the same offense for double jeopardy purposes. See *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . In conducting this inquiry, we look only to the relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Denson*, 67 Conn. App. 803, 808–809, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002).

Because the state did not file a long form information and the short form informations do not set forth the facts underlying the charges, we will examine the record to determine whether the charged offenses arose out of the same act or transaction. The court explained that it was using the same actions by the defendant as the basis for its finding with regard to the breach of the peace and disorderly conduct charges. Accordingly,

we conclude that the first prong of *Blockburger* is satisfied.

The second prong of *Blockburger* concerns whether each statutory violation requires proof of a fact that the other does not. General Statutes § 53a-181 (a) (1) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ." General Statutes § 53a-182 (a) (1) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior . . . ." It is clear that the only difference between the two statutes is that the breach of the peace statute requires that the proscribed conduct occur in a public place. The disorderly conduct statute does not require proof of any fact not also required for conviction under the breach of the peace statute.

Here, it is clear that the court used the same facts to convict the defendant of the two charges. After finding the defendant guilty of breach of the peace, the court stated: "And as it relates to disorderly conduct, the elements they are essentially the same as breach of the peace, however, there is no requirement that the conduct [be in] a public place although that certainly is not an issue for this because I have found it was in a public place and that you were engaging in fighting, violent, tumultuous, or threatening behavior, that is, as it relates to these police officers, once again, flailing your arms, which was testified [to] by the officer."

Under the facts of this case, we conclude that it was not possible to commit the offense of breach of the

peace in the second degree without having first committed the offense of disorderly conduct. Accordingly, these two offenses stand in the relationship of greater and lesser included offenses.

"It is well established that if two offenses stand in the relationship of greater and lesser included offense, then [t]he greater offense is . . . by definition the same for purposes of double jeopardy as any lesser offense included in it." (Internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 485, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003). The defendant's convictions on these two charges violated the constitutional prohibition against double jeopardy. "[T]he remedy in a case such as this is to combine the conviction on the lesser included offense with the conviction on the greater and to vacate the sentence on the lesser included offense." (Internal quotation marks omitted.) Id., 486.

The judgment is reversed in part and the case is remanded with direction to combine the conviction of disorderly conduct with the conviction of breach of the peace and to vacate the sentence on the conviction of disorderly conduct. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.