STATE OF CONNECTICUT *v.* FELIPE MULERO
(AC 24831)

Bishop, DiPentima and Foti, Js.

Argued June 6—officially released September 20, 2005

*Jon L. Schoenhorn,* for the appellant (defendant).

*Marjorie Allen Dauster,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,*

state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Felipe Mulero, appeals from the judgment of conviction, rendered after a jury trial, of forgery in the second degree in violation of General Statutes § 53a-139 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to support the conviction, (2) the trial court improperly failed to instruct the jury that unanimity on one of the two alternative theories of criminal liability was required for a guilty verdict and (3) prosecutorial misconduct during the state's closing argument deprived him of a fair trial. We affirm the judgment of the trial court.

In 1996 and 1997, the defendant submitted to the department of motor vehicles three applications for a special permit to operate a motor vehicle to and from work because his driver's license had been suspended. Those applications require a statement of the applicant's specific days and hours of employment, limited to a continuous twelve hour period each day. The applicant's employer also must sign each application. In the first application, dated October 31, 1996, the defendant stated that he was a resident of Newington and was employed as a real estate agent there. The defendant also stated that his hours of employment were 11 a.m. to 11 p.m. seven days per week. The first application bore an employer's signature purportedly made by Robert Velardi, the manager of the real estate office where the defendant stated that he worked. The department denied that application.

In the second application, dated February 10, 1997, the defendant stated that he was employed as a teacher at Vinal Technical High School in Middletown. The defendant also stated that his hours of employment were 6:30 a.m. to 6:30 p.m., Monday through Saturday,

and 10:30 a.m. to 6:30 p.m. on Sunday. The second application bore an employer's signature purportedly made by the defendant's supervisor, Thomas Serra. The department granted that application and issued the defendant a special permit that was valid from April 18 to June 11, 1997. The defendant's driver's license was suspended again on July 5, 1997. The defendant then submitted a third application, which was dated October 31, 1997, and bore an employer's signature purportedly made by Serra. The defendant stated that his hours of employment at Vinal Technical High School were 6 a.m. to 6 p.m., seven days per week. The department denied that application because of the July, 1997 suspension.

Police began investigating the defendant's applications in December, 2000. Velardi denied signing the first application and told police that the defendant had applied for a job as a real estate agent but never had worked for him. Although the defendant had worked at Vinal Technical High School, Serra denied signing the second and third applications. Serra stated that the defendant had worked at Vinal Technical High School only at the time he had submitted the second application and that his hours of employment were not 6:30 a.m. to 6:30 p.m., Monday through Saturday, and 10:30 a.m. to 6:30 p.m. on Sunday, as he had stated in the application, but instead were 7:25 a.m. to 2:55 p.m., Monday through Friday.

The state did not charge the defendant until May 15, 2002, by which time prosecution of the alleged forgeries involving the first and second applications was time barred by General Statutes § 54-193 (b). In an amended long form information, the state charged the defendant with one count of forgery in the second degree in connection with the third application. The court granted the state's motion to present evidence relating to the first and second applications as evidence of prior uncharged misconduct. Following the trial, the jury

returned a verdict of guilty. The court rendered judgment in accordance with the verdict and sentenced the defendant to five years incarceration, execution suspended after twenty-five months, followed by five years probation. This appeal followed.

I

The defendant's first claim is that the evidence was insufficient to support his conviction because the state did not prove that he had issued or possessed the third application in violation of § 53a-139 (a) (2)[1] at the time when Serra's forged signature had been added to it. We disagree.

As an initial matter, we note that the defendant preserved his claim by moving for a judgment of acquittal, which the court denied. We now turn to the standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact]

---

[1] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely *makes*, completes or alters a written instrument or *issues or possesses* any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed . . . (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant . . . ." (Emphasis added.)

The defendant points out that the court instructed the jury only as to falsely *making* a written instrument and *issuing or possessing* a written instrument that a person knows to be forged, and not as to falsely completing or altering a written instrument. Specifically, the defendant's first claim is that there was not enough evidence to convict him of falsely *making* a written instrument or *issuing or possessing* a written instrument that he knew to be forged. We do not address the issue of the false making of a written instrument because we conclude that there was sufficient evidence to convict the defendant of issuing or possessing a written instrument that he knew to be forged.

reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Bloom*, 86 Conn. App. 463, 471–72, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005).

Construing the evidence in the light most favorable to sustaining the conviction, we determine that the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt. Serra testified at trial that he had not signed the third application and that the defendant did not work at Vinal Technical High School when the defendant submitted that application to the department of motor vehicles. The jury also was permitted to consider the testimony of Serra and Velardi in connection with the first and second applications as evidence of the defendant's prior uncharged misconduct. Most importantly, the defendant was the only person who could have benefited from forging Serra's signature. Those circumstances constituted sufficient evidence that the defendant had issued or possessed a written instrument that he knew to be forged in violation of § 53a-139 (a) (2). We therefore reject the defendant's claim of insufficient evidence.

II

The defendant's second claim is that the court improperly failed to instruct the jury that in order to

find him guilty, it had to agree unanimously on whether he (1) falsely made a written instrument or (2) issued or possessed a written instrument that he knew to be forged. We disagree.

The defendant did not preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] We determine that the record is adequate for review and that the claim is of constitutional magnitude.[3] "[A] claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Bailey*, 82 Conn. App. 1, 5, 842 A.2d 590, cert. denied, 269 Conn. 913, 852 A.2d 744 (2004). We conclude, however, that the defendant has failed to satisfy the third prong of *Golding* because the alleged constitutional violation does not exist.

In *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), our Supreme Court explained the principles governing specific unanimity charges: "[W]e have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction.

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] The defendant states that his claim encompasses both federal and state constitutional violations. Because he has not briefed a state claim separately, we consider only a claim of a federal constitutional violation. See *State* v. *Vega*, 259 Conn. 374, 384 n.15, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." Id.

"With respect to the first prong of *Famiglietti*, namely, whether the trial court's jury instructions have sanctioned a nonunanimous verdict, it is well established that the absence of language expressly sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test. . . . Indeed, if the trial court did not sanction a nonunanimous verdict we need not address the other parts of the *Famiglietti* test." (Citations omitted; internal quotation marks omitted.) *State* v. *Ceballos*, 266 Conn. 364, 419–20, 832 A.2d 14 (2003).

The defendant identifies only one instance in which he argues that the court's instructions could have led the jury to believe that a nonunanimous verdict was permitted. The court instructed the jury: "For you to find the defendant guilty of forgery in the second degree, you must first determine beyond a reasonable doubt that the defendant is guilty of forgery. You must then determine whether the subject of the crime falls into one of the categories that the statute describes. If it does not correspond to one or more of the items listed in the statute, you must find the defendant not guilty of second degree forgery."

We are not persuaded that that instruction could have led the jury to believe that the court sanctioned a non-

unanimous verdict. The court merely explained that the jury had to determine which portion of the statute applied to the defendant's conduct. Because the court's instructions did not contain any language that suggested that a nonunanimous verdict was acceptable, we do not address the remainder of the *Famiglietti* test. We therefore conclude that it was not improper for the court to omit a specific unanimity charge on the two alternative theories of falsely making a written instrument and issuing or possessing a written instrument that a person knows to be forged.

## III

The defendant's last claim is that prosecutorial misconduct deprived him of a fair trial. Specifically, the defendant claims that the prosecutor improperly expressed her opinion regarding the credibility of a witness and the defendant's guilt. We disagree.

We conduct a two step inquiry in analyzing claims of prosecutorial misconduct. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004). "The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [The court] must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) Id., 571. The factors to be considered in assessing the prosecutor's actions include "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength

of the state's case." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

We undertake the inquiry even though the defendant failed to object to the alleged misconduct in the prosecutor's closing argument.[4] "[A] reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial." *State* v. *Stevenson*, supra, 269 Conn. 573. We also recognize that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Rupar*, 86 Conn. App. 641, 656, 862 A.2d 352 (2004), cert. denied, 273 Conn. 919, 871 A.2d 1030 (2005).

The defendant directs us to four of the prosecutor's comments in which she appeared to express an opinion. The first two comments occurred during closing argument. First, the prosecutor referred to her direct exami-

---

[4] We note, however, that "the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time. . . . [C]ounsel's failure to object at trial, while not by itself fatal to a defendant's claim, frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 576.

nation of a handwriting expert who had testified that it was highly probable that the defendant was the author of the printed script on the three applications that he had submitted to the department of motor vehicles. The prosecutor had asked the expert to rate the probability on a scale of one to ten, and the expert had answered "nine." During closing argument, the prosecutor stated that "nine on a scale of one to ten is pretty darned sure." In the second comment challenged by the defendant, the prosecutor told the jury: "[W]hat is important to remember is that it is my burden to prove this case to you, that I need to prove to you each and every element. I believe that I have."

The third and fourth comments occurred during the state's rebuttal of the defendant's closing argument. In the third comment, the prosecutor again referred to the handwriting expert's testimony. The prosecutor stated: "Nine out of a possible ten that that handwriting was [the defendant's]. I can suggest to you that the signature is his." The prosecutor then encouraged the jury to compare the defendant's signature to the forged signatures on the three applications. The prosecutor stated: "You don't even have to be an expert to say, wow, those are pretty close. Those look like the same thing, and I think that's important." In the fourth comment, the prosecutor cast doubt on the defendant's argument that someone who worked with Serra, the defendant's supervisor at Vinal Technical High School, could have forged Serra's signature on the third application. The prosecutor stated: "I don't think so. And I think by applying common sense, that's not—that's not really a plausible theory."[5]

---

[5] In his brief, the defendant refers to a fifth comment in which the prosecutor stated that she needed to prove only that Serra's signature on the third application had been forged, not that it had been forged by the defendant. Because the defendant fails to present an argument regarding that comment, we do not afford it review. See *State* v. *Colon,* 272 Conn. 106, 153 n.19, 864 A.2d 666 (2004).

Several considerations guide our review of the four comments challenged by the defendant. "The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Santiago*, 269 Conn. 726, 747, 850 A.2d 199 (2004). "Although prosecutors should avoid the use of the personal pronoun 'I' . . . the use of the word does not, without more, transform an otherwise proper closing argument into an impermissible expression of personal opinion." Id., 748. "[I]t does not follow . . . that every use of rhetorical language or device is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) Id., 747. We "must give the jur[ors] the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The [prosecutor] should not be put in the rhetorical straightjacket of always using the passive voice, or continually emphasizing that he is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) Id., 751. "[T]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . It is in that context that the burden [falls] on the

defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Tate,* 85 Conn. App. 365, 377, 857 A.2d 394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004).

We conclude that the prosecutor's comments were not improper and therefore did not constitute misconduct. "It is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Thompson,* 266 Conn. 440, 465, 832 A.2d 626 (2003). "The mere use of phrases such as 'I would think,' 'I would submit,' and 'I really don't think,' does not transform a closing [argument] into the improper assertions of personal opinion by the [prosecutor]." *State* v. *Coney,* 266 Conn. 787, 814–15, 835 A.2d 977 (2003).

In the present case, the prosecutor merely commented on the evidence and asked the jury to draw reasonable inferences from the facts in evidence when she stated that "nine on a scale of one to ten is pretty darned sure"; that she could demonstrate that the defendant had forged Serra's signature; that the jurors themselves could compare the signatures in evidence; and that the defendant had not presented a plausible defense. The prosecutor's comment that she believed that she had proven the state's case merely concluded her summary of the evidence relating to the elements of the crime. We therefore reject the defendant's claim of prosecutorial misconduct.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The defendant argues that even if the prosecutor's conduct was not improper, we should invoke our supervisory powers to reverse his conviction. Those powers "are an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only

for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *State v. Sargent*, 87 Conn. App. 24, 31 n.4, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). We conclude that the prosecutor's conduct in the present case does not implicate an issue of the utmost seriousness for the integrity of the defendant's trial or the perceived fairness of the judicial system.