STATE OF CONNECTICUT *v.* MADALENA SILVA
(AC 25517)

Dranginis, Harper and McDonald, Js.

*(One judge dissenting)*

Argued May 5, 2005—officially released January 31, 2006

*Norman A. Pattis*, with whom, on the brief, were *John R. Williams* and *Kim Coleman Waisonovitz*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Jonathan Benedict*, state's attorney, and *Craig Nowalk*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Madalena Silva, appeals from the judgment of conviction, rendered after a jury trial, of two counts of interfering with an officer in violation of General Statutes § 53a-167a.[1] On appeal, she claims that the state did not present sufficient evidence to support her conviction and the trial court improperly instructed the jury as to consciousness of guilt.

The state charged the defendant in an amended information with two counts of interfering with a police officer and two counts of breach of the peace. The first count of interference with a police officer charged that the defendant did so "by saying to [the officer] when requested to produce [her] license, registration and insurance information during a motor vehicle stop, 'F__k you. I ain't giving you s__t, asshole . . . .' " The second count charged the defendant with interfering with an officer "by running from [the officer] and fleeing on foot across North Avenue and entering the driver's side of an unidentified green vehicle which left the scene at a high rate of speed, after being instructed by [the officer] not to leave the scene . . . ."

A jury found the defendant guilty of the two counts of interfering with an officer in violation of § 53a-167a. The defendant was acquitted of one of the breach of the peace charges.[2] This appeal followed.

We first set forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the

---

[1] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."

[2] The trial court granted the defendant's motion for judgment of acquittal on one count of breach of the peace at the close of the state's case.

light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [fact finder] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Robert H.*, 273 Conn. 56, 64, 866 A.2d 1255 (2005).[3]

The following evidence was presented at trial. At about 5 p.m. on June 22, 2003, the defendant's brother was involved in an automobile collision on North Avenue in Bridgeport. All three vehicles involved in the collision had to be towed from the scene because of major damage, and the defendant's brother complained of neck and back pain. Officers Jason Ferri and Todd Sherback of the Bridgeport police department, who were on routine motor patrol, went to the accident scene to help the investigating officer, Officer Mark Gudauskas, complete necessary paperwork. To avoid obstructing the heavy rush hour traffic, Ferri and Sherback parked their police cruiser in a nearby private parking lot.

As the defendant drove by the scene, Ferri and Sherback observed her stop abruptly on the street, back up, execute a three point turn and back quickly into the parking lot where they had parked their police cruiser, nearly causing a collision. They also saw that her vehicle did not have a required front license plate. The officers told the defendant that they were going to issue an infraction ticket for unsafe backing and no front license plate. At that time, the officers asked the defendant for her driver's license, automobile registration and insur-

___

[3] The application of this rule is complicated by the amended information, which charged the defendant in two counts, each of which detailed the specific manner by which the defendant was charged with violating § 53a-167a, and set forth the essential facts and the particulars of the offenses.

ance card. She asked to be let alone. To the officers' second request, she replied, "You Bridgeport cops are all the f__king same. To protect and serve? Yeah right, my ass." When the officers repeated their request, she stated, "F__k you. I ain't giving you s__t, asshole. I'm taking my brother to the hospital, and you are not f__king stopping me." She was loud and belligerent, stamping her foot, and a crowd of twenty-five to thirty people gathered. At that time, the officers did not issue the infraction ticket because the defendant became very loud and angry when asked for her registration. At some unknown time, however, the officers did issue an infraction ticket.

Ferri and Sherback decided to arrest the defendant for breach of the peace and interfering with an officer after her belligerent responses to their requests. The defendant's mother, who was present with the defendant's father, began to interfere with the officers' investigation by stating that her daughter had done nothing wrong. Because of this, the defendant was not arrested. At that time, as the officers tried to talk to the defendant's mother, the defendant immediately ran into the street, entered a vehicle and drove away, leaving her automobile in the parking lot. Ferri had told the defendant not to leave the scene and then asked the defendant's mother to use her cellular telephone to call the defendant. The defendant's mother explained to the officer that the defendant was bringing her brother to a hospital. After speaking with the defendant, her mother told the officers that the defendant would return after she went to the hospital.

The officers waited for one-half hour and conferred with their supervisor, Sergeant Stephen Lougal, whom they called to explain that they intended to arrest the defendant. They also wanted Lougal to speak to the defendant's mother about the mother's complaint that her son had not received medical assistance. The offi-

cers then went to the nearer of the two hospitals in Bridgeport. They located the defendant at the emergency room and arrested her for breach of the peace and interfering with an officer.[4] When the officers approached her, the defendant stated to them, "Not you assholes again," and told her friend the officers were coming for her.

Our Supreme Court has held that a person is guilty of "interfering" with an officer when he interferes with a police officer in the performance of his duties, and the statute encompasses only interference that is intentional. *State* v. *Williams*, 205 Conn. 456, 473–74, 534 A.2d 230 (1987). In *Wiliams*, our Supreme Court, "[t]o avoid the risk of constitutional infirmity," also construed "53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Internal quotation marks omitted.) Id., 473, citing *Chaplinski* v. *New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031(1942).

The defendant claims that there was insufficient evidence to support her conviction for obstructing or hindering an officer.[5] She argues that the conduct alleged in the first count of the information does not constitute interfering with an officer in violation of § 53a-167a.

In *Williams*, our Supreme Court limited § 53a-167a to physical conduct and "fighting words." Justice Powell, concurring in *Lewis* v. *New Orleans*, 415 U.S. 130, 135, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974), stated that words

---

[4] As to footnote 3 of the dissent, the defendant's mother was upset because of her son's injuries, lack of medical attention and the police interaction with the defendant. The mother exchanged car keys with the defendant and asked the defendant to bring her son to the hospital in the mother's car. Having blocked the father's car with their cruiser, the officers had the defendant's car towed from the scene. The mother and father arrived at the emergency room immediately behind the officers.

[5] The court did not charge the jury as to resisting an officer.

may or may not be fighting words depending on the circumstances. In *Lewis*, when the police asked for her husband's motor vehicle documents, the defendant loudly called them "m. f[s]." Id., 131 n.1. Justice Powell, whose view of language as obstructing police officers was followed in *Houston* v. *Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987), noted the objectionable words would not likely have precipitated a physical confrontation between a middle aged woman and the police. Id., 135 (Powell, J., concurring). The evidence in this case was that the defendant was a young female college student addressing two trained police officers. The defendant's use of the "f" word and an objectionable insult would be equally unlikely to provoke a violent reaction from the officers, who are expected to exercise a higher degree of restraint than the average citizen. Sherback testified that Bridgeport officers are trained to handle verbal insults and not to punch someone who swears at them. We conclude that there were no fighting words.

In order for this court to sustain a conviction for hindering an officer, in this case, the state has to have produced evidence that the defendant, by her actions, intentionally hindered the officer. The failure to turn over the requested documents alone could not support a conviction for hindering the officers because the legislature penalized that conduct itself as an infraction under General Statutes § 14-217. See *State* v. *Aloi*, 86 Conn. App. 363, 370–71, 861 A.2d 1180 (2004), cert. granted, 273 Conn. 901, 867 A.2d 840 (2005).

All of the cases that we have found that uphold a conviction for intentionally interfering with an officer deal either with physical assaults or struggles with officers or with attempts to escape from apprehension or discovery at a crime scene or to destroy evidence of guilt of a crime. See, e.g., *State* v. *Williams*, supra, 205 Conn. 468–69; *State* v. *Simmons*, 86 Conn. App. 381,

388, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 544 U.S. 826, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005); *State* v. *Hampton*, 66 Conn. App. 357, 360–61, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001); *In re Adalberto S.*, 27 Conn. App. 49, 55–56, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992); *State* v. *Weber*, 6 Conn. App. 407, 416–17, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986); *State* v. *Biller*, 5 Conn. App. 616, 621, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986).

The state, citing *State* v. *Biller*, supra, 5 Conn. App. 619–21, claims that delaying the police in issuing the infraction ticket is sufficient to support a conviction for interfering with an officer. *Biller* involved, however, a defendant who resisted a search of his pockets for incriminating evidence and struggled to prevent the search. Id., 619. Here, the evidence was only that the officers told the defendant that they intended to issue a ticket. They also asked the defendant for her motor vehicle license and registration documents. Although Ferri testified that he asked for the documents because a ticket was going to be issued, the state did not produce evidence that it was necessary to obtain the defendant's motor vehicle documents to issue the infraction ticket or that the officers had informed the defendant of that necessity. There was also undisputed evidence that the defendant left her vehicle in the parking lot with the police officers. Her mother, who remained with the officers, testified without dispute that she gave the requested paperwork found in the vehicle to the police. The defendant's mother also was available to identify the defendant and to give her address to the police. Morever, Sherback testified that at some later time the infraction ticket was issued, but the state did not establish the time or other circumstances under which the

infraction ticket was issued. We note that the only evidence as to delay was the testimony that the officers waited one-half hour after the defendant left the scene, which was the subject of the second count.

The state argues that the defendant's failure to produce her operator's license and the vehicle's registration supports the finding that her actions hindered the officer's efforts to issue her an infraction ticket. It argues that the defendant's guilt was based on her physical act of failing to turn over the requested information to a police officer when ordered to do so, not solely on her verbal reaction. The state, however, produced evidence that showed only that, at the time, the officers did not issue the ticket because the defendant became loud and angry when they requested the automobile registration.

The state also argues that because the defendant was very loud and angry in addressing the officers, causing a crowd to gather, the officers decided to arrest her, and that this was the reason the infraction ticket was delayed. This scenario was not presented in the charges detailed in count one.

In this case, the jury was given the information, which charged that the defendant interfered with an officer "by saying to Officer Ferri when requested to produce license, registration and insurance information during a motor vehicle stop, 'F__k you, I ain't giving you s__t, asshole . . . .' " Because the jury was instructed to consider the offense charged in the information in reaching its verdict, the jury was not required to find that the defendant did not give the necessary documents to the officers or that the defendant's causing a disturbance was the cause of delay and that the officer intended to issue an infraction ticket and notified the defendant that the documents were necessary to do so.

The dissent refers in footnote 2 to the prosecutor's statement to the court in the absence of the jury that the state intended to rely on other conduct than the verbal refusal to prove count one. This did not amend the information submitted to the jury and considered by it in returning its verdict as to that count. The jury verdict as to that count and count two, to the contrary, reflects that the jury considered the conduct set forth in the counts submitted for consideration and not some other conduct under different considerations. We accordingly reverse the defendant's conviction on count one.

The second count charged that the defendant interfered with the performance of the officers' duties "by running from Ferri and fleeing on foot across North Avenue and entering the driver's side of an unidentified green vehicle which left the scene at a high rate of speed, after being instructed by Ferri not to leave the scene.[6] The state argues that the defendant's leaving the scene to bring her brother to a hospital intentionally hindered the officers in issuing the ticket for the motor vehicle infraction and in arresting her for breach of the peace and interfering with a police officer.[7] The state

[6] The state's evidence as to count one was that the defendant stated she would not give them any documents, that she was bringing her injured brother to a hospital and that they were not going to stop her. As to count two, the state presented evidence that, despite the officer's instruction to remain, the defendant immediately left to bring her brother to a hospital.

The two offenses charged arguably constitute in reality but one continuous offense instead of two separate and distinct offenses. It has long been our law that the prosecutor cannot divide a continuing crime into bits and prosecute separately for each. See *United States* v. *Chagra*, 653 F.2d 26, 29 (1st Cir. 1981), cert. denied, 455 U.S. 907, 102 S. Ct. 1252, 71 L. Ed. 2d 445 (1982), citing *Ex parte Snow*, 120 U.S. 274, 7 S. Ct. 556, 30 L. Ed. 658 (1887); see also *United States* v. *Ansaldi*, 372 F.3d 118, 125, n.3 (2d Cir.), cert. denied, 543 U.S. 949, 125 S. Ct. 364, 160 L. Ed. 2d 266, cert. denied sub nom. *Gates* v. *United States*, 543 U.S. 960, 125 S. Ct. 430, 160 L. Ed. 2d 324 (2004).

[7] In its brief, the state argues that the defendant's claim of legal justification is not a valid defense to the crimes charged. We disagree with this statement. In *State* v. *Messler*, 19 Conn. App. 432, 438, 562 A.2d 1138 (1989), we recognized the defense of necessity, not as negating intent, but because "the law

points to Ferri's testimony that, prior to her leaving, he told the defendant to remain at the scene. Sherback testified that the defendant was not told that she was free to leave because the officers intended to issue a ticket for the motor vehicle infraction and arrest her for breach of the peace. Sherback later clarified his testimony that the defendant was asked to return from the hospital to be placed under arrest. There was no evidence, however, that the officers informed the defendant they intended to arrest her for criminal offenses or that she needed to remain to be given the infraction ticket. As to the infraction ticket, the state presented no evidence as to the procedure to be followed in issuing an infraction ticket. As charged in the information, the second count did not require the jury to find that the defendant was informed that she was to be arrested, that she must remain to be issued an infraction ticket or that she knew of these circumstances. The jury's verdict as to count two again reflects that the jury considered the conduct set forth in that count for consideration and not some other conduct or different circumstances.

In this case, there is no evidence that the defendant fled the scene to avoid discovery or apprehension, but rather she brought her injured brother to a hospital and informed the officers of her intention. The officers testified that they knew the defendant was going to a

ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." (Internal quotation marks omitted.) Id., 438. There is law that "there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a superseding value that makes it inappropriate and unjust to apply the usual criminal rule." (Internal quotation marks omitted.) Id., 437. The state also argues that the brother was not injured and had earlier refused medical attention. There was undisputed evidence, however, that he struck his head on the steering wheel when his car was struck twice and was developing a migraine headache when the defendant saw him.

hospital. Our Penal Code provides that one acts intentionally when his conscious objective is to cause such a result. Although necessity as a defense was not raised at trial, the defendant's conduct in openly going to a hospital and leaving her mother and her automobile behind with the police are circumstances that render evidence of the defendant's conduct insufficient to support a reasonable finding that the defendant intentionally sought to delay the officer's efforts to issue her an infraction ticket.

Here, the state argues that the defendant's flight supports her conviction. The state cites *State* v. *Scott*, 270 Conn. 92, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005), for the principle that an innocent explanation for flight does not prohibit evidence of flight or a consciousness of guilt instruction if there is evidence that would reasonably support a finding of flight as consciousness of guilt. In *Scott*, our Supreme Court found such evidence where the defendant did not inform the police of his whereabouts and of his intention to leave when he knew that he was about to be arrested. Id., 106. Although flight as consciousness of guilt and flight as intentional interference with an officer are distinct issues, the principle that there must be sufficient evidence that supports a finding of culpable flight applies to both.

As to the performance of their duties, it was, as Gudauskas and Ludan testified, the first responsibility of the police to make medical assistance available to accident victims. In light of these unusual and particular circumstances,[8] we conclude that the defendant's conviction as to count two was not supported by the evidence. Rather than interfering with the primary duty of the police, the defendant was carrying it out. As a

---

[8] We note that the prosecutor in summation stated that the issuance of this infraction ticket "might seem frivolous to some people."

corollary of their duty, the police were required to assist rather than hamper the accident victim in receiving medical care. Regarding the immediate issuance of the infraction ticket, that duty of the police is secondary to the primary goal in this case. The jury reasonably could not find the required core criminal conduct in these circumstances. Accordingly, we reverse the defendant's conviction.[9]

The judgment is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion, HARPER, J., concurred.

DRANGINIS, J., dissenting. I respectfully dissent from the majority opinion, primarily because the majority has decided the question of the defendant's intent, which our law has determined is a question of fact for the jury to decide.

The defendant, Madalena Silva, was charged in a four count amended information with two counts of interfering with an officer, a misdemeanor, and two counts of breach of the peace in the second degree.[1] Count one alleged that the defendant "did interfere with a Bridgeport police officer, to wit: by saying to Officer Jason Ferri when requested to produce license, registration and insurance information during a motor vehicle stop, 'Fuck you, I ain't giving you shit, asshole,' *and* did obstruct, resist or hinder said Bridgeport police officer in the performance of his duties, in violation of [General

---

[9] We therefore do not reach the defendant's argument that it was improper to give an instruction as to consciousness of guilt.

[1] The court granted the defendant's motion for a judgment of acquittal on count four of the amended information, breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (5). The jury found the defendant not guilty of the second count of breach of the peace in the second degree.

Statutes §] 53a-167a (a) . . . ." (Emphasis added.)[2] Count two alleged that the defendant "did interfere with a Bridgeport police officer, to wit: by running from Officer Jason Ferri and fleeing on foot across North Avenue and entering the driver's side of an unidentified green vehicle which left the scene at a high rate of speed, after being instructed by Officer Jason Ferri not to leave the scene, and did obstruct, resist or hinder said Bridgeport police officer in the performance of his duties, in violation of [§] 53a-167a (a) . . . ." Following a trial, a jury found the defendant guilty of both counts of interfering with an officer. The court sentenced the defendant to one year in the custody of the commissioner of correction, execution suspended, and two years of probation on both counts, to be served concurrently.

On appeal, the defendant claims that (1) as a matter of law, she is not guilty of the charges of which she was convicted and (2) the court improperly charged the jury on consciousness of guilt. I would affirm the judgment of the trial court.

I

The defendant's first claim is that there was insufficient evidence by which the jury could have found her guilty of violating § 53a-167a (a). As to the allegations of count one, the defendant claims that the evidence was insufficient because it is not enough that her conduct was intended to hamper the performance of a police officer's duties, the conduct actually must hamper the police officer in the performance of his or her duties. As to the allegations of count two, the defendant

---

[2] At trial, the court questioned the state whether it was relying simply on the defendant's oral refusal to comply with the officer's request. The state responded that, in addition to the defendant's words, it intended to prove that the defendant obstructed, resisted or hindered the officers by failing to produce the requested information.

claims that (1) there was no evidence presented, nor was there any allegation made, that the defendant had a duty to remain at the scene, and (2) the evidence demonstrated that she left the scene for the purpose of taking her brother to a hospital. The defendant claims that the state failed to prove intent to interfere with respect to count two. Because intent is a question to be determined by the trier of fact, I respectfully disagree with the defendant's claims and the majority's analysis of them.

The appellate courts of this state have often set out the standard of review with respect to claims of insufficient evidence. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mulero*, 91 Conn. App. 509, 512–13, 881 A.2d 1039 (2005).

Section 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders . . . any peace officer . . . in the performance of such peace officer's . . . duties." "This court has stated that . . . § 53a-167a . . . defines interfering to *include* obstruction,

resistance, hindrance or endangerment. . . . By using those words it is apparent that the legislature intended to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . In enacting § 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. . . . The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose violates the statute." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Hampton*, 66 Conn. App. 357, 375, 784 A.2d 444, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). "To hinder is defined as to make slow or difficult the course or progress of." (Internal quotation marks omitted.) *State* v. *Biller*, 5 Conn. App. 616, 621, 501 A. 2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S. Ct. 3296, 92 L. Ed. 2d 711 (1986).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inference drawn therefrom." (Internal quotation marks omitted.) *State* v. *Hampton*, supra, 66 Conn. App. 376 (defendant disobeyed officer's command to get down from window, avoided capture by escaping through another window and fled from officers). It is the role of the jury to accept or reject the credibility of a witness' testimony, disputed or not. See *State* v. *Nixon*, 92 Conn. App. 586, 600, 886 A.2d 475 (2005).

In this case, the officers stopped the defendant in relation to the manner in which she operated a motor vehicle and the fact that the vehicle did not bear the required front license plate. "[T]he General Assembly has enacted legislation in the motor vehicle context

that requires a motor vehicle operator to provide his or her identification to a police officer on demand. General Statutes § 14-217 expressly provides a stop and identify requirement for motorists." (Internal quotation marks omitted.) *State* v. *Aloi*, 86 Conn. App. 363, 370, 861 A.2d 1180 (2004), cert. granted on other grounds, 273 Conn. 901, 867 A.2d 840 (2005). At the scene, the defendant failed to provide the officers with her operator's license, registration and insurance card. Because § 14-217 requires a motorist to produce her identification on demand at the request of an officer, the jury reasonably could have concluded that the defendant hindered the officers' investigation by failing to provide the requested information at the scene.[3] Furthermore, the officers instructed the defendant not to leave while they were conducting their investigation. Nonetheless, the defendant left and the officers were required to follow her to a hospital. A jury reasonably could have found that the defendant's behavior in failing to provide identification to the officers at the scene and leaving the scene when instructed not to leave hindered the officers' performance of their duties under the motor vehicle laws of this state.[4]

---

[3] I see no relevancy as to the conduct of the defendant's mother at the scene of the incident to the issue in this appeal. On the basis of this evidence, the jury, however, reasonably could have drawn inferences in favor of the state as to why the mother did not accompany her son to the emergency room rather than intercede between the defendant and the police officers. *Furthermore, the defendant's brother testified that he had declined the police officers' offer to call an ambulance for him.*

[4] I also take exception to the majority's application of *State* v. *Williams*, 205 Conn. 456, 534 A.2d 230 (1987), to this case. To avoid the risk of constitutional infirmity, our Supreme Court has construed § 53a-167a "to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Internal quotation marks omitted.) Id., 473. The police officers exercised discretion as to the events that were transpiring. They did not react to the defendant's words but rather to the crowd that was converging as a result of her vulgar responses to them. Rather than escalate the event, they told the defendant not to leave before the infraction ticket was given to her.

At footnote 6, the majority construes the defendant's conduct as one continuous offense. I disagree. While the offenses have temporal and spatial proximity, they were distinct acts of hampering the police officers from performing their duties. See *State* v. *Browne*, 84 Conn. App. 351, 379, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004) (same transaction may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which constitutes completed offense). The defendant did not raise the issue in her brief. See *State* v. *Rosario*, 81 Conn. App. 621, 640, 841 A.2d 254 (Supreme Court does not approve of this court's deciding issues that were not raised by parties) (*Schaller, J.,* concurring), cert. denied, 268 Conn. 923, 848 A.2d 473 (2004); see also *Lynch* v. *Granby Holdings, Inc.,* 230 Conn. 95, 98–99, 644 A.2d 325 (1994). The majority implies that because the defendant may have been found guilty of having violated § 14-217, her behavior in that regard could not also be found to be a violation of § 53a-167a. I disagree because the elements of the offenses are different. See, e.g., *State* v. *Ellision,* 79 Conn. App. 591, 600–601, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003) (elements necessary for conviction of risk of injury to or impairing morals of child different from elements necessary for conviction of sexual assault in second degree).

II

Because I would affirm the judgment of the court with respect to the defendant's claim of insufficient evidence, I will address the defendant's claim that the court improperly charged the jury with regard to consciousness of guilt. The defendant claims that the court improperly gave a consciousness of guilt instruction to the jury because there was an innocent explanation for her leaving the scene, namely, to take her brother to a hospital. Again, the question of the defendant's intent

in leaving the scene when instructed by a police officer not to leave is a question for the jury to determine. I, therefore, conclude that the court properly charged the jury.

There was evidence that the officers ordered the defendant to remain at the scene, but she fled in a motor vehicle. When the officers arrived at the emergency room, the defendant told a friend that the police were coming to get her. On the basis of this evidence, the state requested that the court charge the jury on consciousness of guilt.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005). To prevail on her claim that the court improperly charged the jury on flight, the defendant must prove that the court abused its discretion. See *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998).

"[F]light, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous." (Internal quotation marks omit-

ted.) *State* v. *Feliciano*, 74 Conn. App. 391, 400, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003). "[A]ll that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration." (Internal quotation marks omitted.) *State* v. *Scott*, 270 Conn. 92, 105, 851 A.2d 291(2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005).

The defendant also claims that the court failed to instruct the jury of her innocent explanation for leaving the scene. The defendant failed to preserve this claim for our review. Because it is not of constitutional magnitude, I decline to review it. *State* v. *Tyson*, 43 Conn. App. 61, 65–66, 602 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996); see *State* v. *Tillman*, 220 Conn. 487, 504, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

Respectfully, for the foregoing reasons, I would affirm the judgment of the trial court.